# CHARLESTON.

BOARD OF EDUCATION OF OCEANA DIST. *v.* MITCHELL *et al.*

Submitted January 19, 1895—Decided April 6, 1895.

1. HUSBAND AND WIFE—MARRIED WOMAN—SEPARATE ESTATE.
   Married woman's separate property.  Points one, two, three, four, five and ten of the syllabus, in the case of *Trapnell* v. *Conklyn* (37 W. Va. 242) and point two of the syllabus in case of *Stewart* v. *Stout*, 38 W. Va. 478, approved.

2. HUSBAND AND WIFE—SEPARATE ESTATE—HUSBAND'S CREDITORS.
   A court of equity will not at the instance of the husband's creditors attempt to charge a wife's separate property with alleged improvements put thereon by the skill and labor of the husband, unless the evidence establishes the existence, and at least the approximate amount, of such improvements.

WATTS & ASHBY for appellant.

DENT, JUDGE :

Virginia D. Mitchell appeals from a decree of the Circuit Court of Wyoming county, rendered on the 17th day of July, 1890, in two consolidated chancery suits pending therein, in

favor of certain judgment creditors to enforce their liens against the real estate of R. Mitchell, the husband of the appellant. An amended bill, to which appellant was made defendant, brought into these suits two certain small tracts of land, one containing one acre, the other two hundred and seventy three poles, the legal title of which was in the defendant, and alleged that said tracts were purchased and paid for by the husband and large improvements were put thereon, by him, and were conveyed at his instance, in order to delay, hinder and defraud his creditors, to the appellant.

Appellant filed her answer, denying the allegations and claiming that said lands and the improvements were paid for and made by her out of her separate estate.

The commissioner to whom the causes were referred reported that the one acre-tract was purchased and paid for by her with funds not furnished by her husband, but that the two hundred and seventy three pole-tract and the improvements to the amount of one thousand four hundred dollars on the other tract were in fraud of the husband's creditors. Appellant excepted to this report, but the court overruled the exception and decreed accordingly.

The evidence for appellant shows that she bought the one acre-tract, and paid for it with money earned by her in teaching school before marriage. The consideration was only thirty dollars. She also testifies, and is sustained by her husband and her vendor, that she purchased the two hundred and seventy three pole-tract for sixty dollars, part of which she paid out of the proceeds of a cow, which was her separate property, and partly out of goods purchased on credit and sold by her, and that the vendor, Clay, had her note for the balance, which was unpaid.

Mr. Henry J. Clay, who sold the two tracts of land to appellant, had a stock of goods, and proposed to her, if she would build on the one acre-tract, he would pay for the same in goods, and move in and occupy the store room. The improvements cost about five hundred dollars, three hundred and twenty eight dollars of this amount was paid by Clay out of the store goods, and remains an open and unsettled account between said Clay and appellant; seventy four dol-

lars for lumber, was also paid out of the store; and eighty dollars for lumber, was paid with a horse which appellant purchased from her father-in-law, Joseph Mitchell, on credit, and which she was to pay for in such things as and when he needed them. A large part remains unpaid.

Apparently from the evidence, the appellant has been since the year 1888, carrying on a store business for herself. About all these matters she had the aid and assistance of her husband, who sometimes clerked for her without charge, and sometimes for H. J. Clay. He also did some inconsiderable work on the buildings, assisting and superintending the carpenters. But the extent and value of such work does not appear. Several witnesses on behalf of the plaintiff gave their opinion that the improvements on the property were worth from one thousand two hundred dollars to one thousand five hundred dollars. These witnesses give a mere estimate founded on the appearance of the property, with little or no expert knowledge. They furnish no basis on which to found a solid judgment, contradicted as they clearly are by the actual cost of the improvements. One witness testifies that some time after the improvements were put on the property, Mr. Mitchell told him that the improvements had cost him one thousand four hundred dollars, besides his own work. It is not pretended that this declaration was made in the presence of the appellant, and it would be an exceedingly harsh rule to permit a wife's separate property to be taken away from her by reason of sweeping declarations made by her husband in her absence, even admitting such declarations to be unquestioned. As a case in point, see *Trapnell* v. *Conklyn*, 37 W. Va. 242 (16 S. E. Rep. 570) where it is held that the declarations of the husband are not admissible against the wife in a contest between the wife and his creditors; that the general rule of evidence is applicable in such cases, *Casto* v. *Fry*, 33 W. Va. 449 (10 S. E. Rep. 799).

Husbands are so accustomed to their old and senile common-law prerogatives, which are slowly yielding to the nobler and more righteous enactments, that, as barons not quite shorn of their strength, they still talk egotistically of

their *femes'* separate estates. They, in ordinary conversation, with a selfishness born of pride, cling to the exploded theory that whatever is my wife's is mine alone, for she is, and yet is not, for I am. We are two in one, and I am the one, even though she supports me.

> "'*Man, poor man,*' said the pitying spirit,
> '*Dearly you* pay for your primal fall.
> Some flow'rets of Eden *you* still inherit,
> But the trail of the serpent is over them all.'"

This appears to be a case wherein a woman who had earned a small amount of money teaching school marries a man who is notoriously insolvent, and undertakes with her frugal savings to buy a small tract of land, improve it by its use, her credit and services in selling goods, and in such other ways as are open to her, and then because her husband has given her to some extent the benefit of his time and labor, and is entitled to her earnings, his creditors must come in and swallow up the whole. In short, in marrying an insolvent man she has hopelessly mortgaged herself to his creditors, and her small accumulations must be surrendered to the satisfaction of his debts. His misfortunes attach to her with remorseless grasp, under the unbending rules of the common-law.

In the case of *Bailey* v. *Gardner*, 31 W. Va. 94 (5 S. E. Rep. 636) this Court held that a wife's earnings are the separate property of her husband. This law is now abrogated by legislative enactment. Acts 1893, c. 3, s. 12. But it was in full force at the time of the institution of the present suits. It is the settled law that improvements put upon a wife's separate property by her husband can be subjected to the payment of the latter's debts. *Bank* v. *Wilson*, 25 W. Va. 244; *Rose* v. *Brown*, 11 W. Va. 122. As an exception to both these rules it has been held that when her skill and labor in the use of her separate property produce profits, they are hers, not earnings belonging to her husband. *Stewart* v. *Stout*, 38 W. Va. 478 (18 S. E. Rep. 726); *Trapnell* v. *Conklyn*, 37 W. Va. 248 (16 S. E. Rep. 570). Also, that a husband may give his attention and labor to the care and improvement of his wife's separate property without making the same liable for the payment of his debts. *Robinson* v. *Neill*, 34 W. Va.

128 (11 S. E. Rep. 999); *Stewart* v. *Stout*, and *Trapnell* v. *Conklyn, supra; Atwood* v. *Dolan*, 34 W. Va. 563 (12 S. E. Rep. 688).

The appellant in the present case purchased this property with her separate funds and credit, improved it on credit, and proceeded to pay for the improvements by the use of the property as a storeroom in which to sell goods. While paying for it in this manner, and before it was paid for, these suits were brought against it. This case is especially in point with *Trapnell* v. *Conklyn, supra,* as followed by *Stewart* v. *Stout, supra.* As to any services rendered or labor performed by the husband, it is governed by the case of *Boggess* v. *Richards' Adm'r,* 39 W. Va. 567 (20 S. E. Rep. 599) where it is held that from the husband's services and labor must be first deducted the support of himself, wife and family before his creditors can ask the benefit of profits thereby accumulated. But there is no evidence to show that there were any profits, or putting any value whatever on his services. Uncertain "guesses" as to the increased value of property furnish no basis on which the court can determine how much the services and labor of a husband may have been instrumental in producing such value, in the absence of any evidence showing or tending to show what such labor and services were worth, and, even if this were in evidence, there is nothing to show a clear profit subject to apportionment by a court of equity.

For the foregoing reasons the decree complained of is reversed as to the appellant, Virginia D. Mitchell, and said suits are dismissed in so far as she and her separate property involved therein are concerned.